UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHAWNEE L.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

20-CV-308-LJV
DECISION & ORDER

---

On March 13, 2020, the plaintiff, Shawnee L. ("Shawnee"), brought this action under the Social Security Act. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On November 20, 2020, Shawnee moved for judgment on the pleadings, Docket Item 13; on February 18, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 16; and on March 11, 2021, Shawnee replied, Docket Item 17.

For the reasons stated below, this Court grants Shawnee's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ('ALJ')] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

**DISCUSSION**

Shawnee argues that the ALJ erred by crafting a physical residual functional capacity ("RFC")[3] based on his lay opinion.  *See* Docket Item 13-1 at 1.  More specifically, she argues that an RFC for light work is inconsistent with the only medical opinion in the record.  *Id.* at 6-8.  She also argues that the additional restrictions included in the RFC are unsupported by medical opinion evidence.  *See id.* at 8-9.  This Court agrees that the ALJ erred and, because that error was to Shawnee's prejudice, remands the matter to the Commissioner.

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c).  An ALJ's RFC determination need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  In fact, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.*; *see also* 20 C.F.R. § 416.927(d)(2) ("Although [the Commissioner] consider[s] opinions from medical sources on issues such as . . . [the claimant's] residual functional capacity . . . , the final responsibility for deciding these issues is reserved to the Commissioner.").  Nevertheless, the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that ' . . . a reviewing court . . . may assess the validity of

---

[3] A claimant's RFC "is the most [she] can still do despite [her] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

3

the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)).

Moreover, although an ALJ is tasked with weighing all the evidence in the record, he cannot reject or discount the opinion of a medical professional unless other competent medical evidence in the record supports that decision.  See *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.  While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)); *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, 'a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'" (quoting *Wagner v. Sec. of Health & Human Servs.,* 906 F.2d 856, 862 (2d Cir. 1990)).

In other words, an ALJ "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Wilson v. Colvin*, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citing *Dailey v. Astrue*, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010), *report and recommendation adopted*, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010).  As a general rule, "where the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual

4

functional capabilities," the Commissioner "may not make the connection himself." *Perkins v. Berryhill*, 2018 WL 3372964, at * 3 (W.D.N.Y. July 11, 2018) (citing *Jermyn v. Colvin*, 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("[N]one of these medical sources assessed [the p]laintiff's functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination.")).

Here, the ALJ found that Shawnee had the physical RFC to:

> . . . perform light work[4] . . . except she can frequently climb ramps and stairs, but only occasionally climb ladders, ropes, or scaffolds. She can have occasional exposure to unprotected heights and moving mechanical parts.

Docket Item 10 at 23. In making this determination, the ALJ assigned "some weight" to the opinion of Nikita Dave, M.D. *Id.* at 25-26.

In relevant part, Dr. Dave diagnosed Shawnee with "poorly controlled" diabetes.[5] *Id.* at 394. She opined that "[d]ue to paresthesias in the feet, [Shawnee should] avoid ladders and heights" and that Shawnee had "[m]ild to moderate limitations for prolonged standing."[6] *Id.* The ALJ explained that partially discounting Dr. Dave's opinion was

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[5] Dr. Dave also diagnosed Shawnee with hyperthyroidism; a thyroid goiter; status post myocardial infraction "per the claimant;" dyslipidemia; and depression. Docket Item 10 at 394.

[6] Dr. Dave also noted that the details of Shawnee's cardiac condition were unknown and that it also unclear "whether she actually sustained a myocardial infraction as she is not on aspirin and has not seen a cardiologist." *Id.*

"consistent with the normal physical exams [and] lack of specialist treatment for cardiac or endocrine issues" in the record. *Id.* at 25-26.

But by discounting Dr. Dave's opinion, the ALJ rejected the *only* opinion that assessed Shawnee's ability to function physically.[7] *Compare* Docket Item 10 at 391-95 (Dr. Dave's opinion documenting her conclusions about how Shawnee's health impacts her physical abilities and limitations), *with, e.g.*, *id.* at 306-77 (hospital records largely including emergency visits with lab results, exam notes, and treatment records). As a lay person, the ALJ was not qualified to then interpret the bare medical evidence in the record and to craft an RFC based on his own surmise. *See Balsamo*, 142 F.3d at 81; *see also Jermyn*, 2015 WL 1298997, at *19 (noting that because "none of the[] medical sources assessed [the p]laintiff's functional capacity or limitations," they did not support the RFC).

The Commissioner argues that the ALJ simply resolved a conflict between Dr. Dave's standing limitation and the rest of the record. *See* Docket Item 16-1 at 7-8. But if that is what the ALJ did, he should have said so and explained why. *See Craft*, 539 F.3d at 673 (7th Cir. 2008) (noting that an ALJ must explain his decision in a way that permits judicial review). For purposes of judicial review, a court may not substitute the Commissioner's argument during litigation for the ALJ's own explanation or lack thereof. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (noting that courts may not accept

---

[7] In so doing, the ALJ created a gap in the record that he was required to fill. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'").

*post hoc* rationalizations for agency action).  And based on the ALJ's own words, it is likely that he discounted Dr. Dave's entire opinion, not just the standing limitation.[8]  *See* Docket Item 10 at 26 (noting Shawnee's lack of specialist care from either a cardiologist or endocrinologist when discounting an opinion assessing the impact of cardiac and endocrine issues).  In any event, the Commissioner's belated attempt to salvage the ALJ's decision is too little and too late.

The Commissioner also argues that Dr. Dave's opinion that Shawnee should avoid ladders and heights was based on "paresthesias in the feet" and that this diagnosis was grounded only in Shawnee's own testimony.  Docket Item 16-1 at 6.  Thus, the Commissioner reasons, the ALJ was entitled to reject that opinion because he was entitled to weigh, and reject, Shawnee's credibility.  *Id.*  But that argument is unfounded for two reasons.  First, the ALJ did not say that, so the Commissioner's post hoc reasoning again cannot remedy the error.  Second, Dr. Dave's diagnosis of paresthesia—"[a] spontaneous abnormal usually nonpainful sensation (*e.g.*, burning,

---

[8] Even if the ALJ had rejected only the standing limitation, that would have been no small error.  Dr. Dave opined that Shawnee was mildly to moderately limited in standing for a long time, and a moderate limitation in standing is not necessarily consistent with light work.  *See Harrington v. Colvin*, 2015 WL 790756, at *14 (W.D.N.Y. Feb. 25, 2015) (collecting cases falling on either side of the issue).  In fact, courts are particularly hesitant to find such limitations consistent with light work when other evidence in the record fails to independently support the conclusion that the claimant can perform such work.  *See Alianell v. Colvin*, 2016 WL 981864, at *13 (W.D.N.Y. Mar. 15, 2016) (concluding that a limitation in prolonged standing was not consistent with light work because, among other things, "the record [did] not suggest that [the plaintiff] participate[d] in activities of daily living . . . consistent with light work").  Here, there was no such evidence.  And Shawnee testified about how difficult it was for her to do even basic activities.  For example, she said that she has trouble walking, *see* Docket Item 10 at 56-7 (describing a walk to the doctor's office that should have taken fifteen minutes but took her forty-five), and that she always regrets trying to do the laundry without assistance.  *Id.* at 57.  So even if the ALJ had rejected only Dr. Dave's standing limitation, that error alone might well have required remand.

7

pricking)"—was necessarily based on subjective reports.  *See* 653800 *paresthesia*, *Stedman's Medical Dictionary*, Westlaw (database updated Nov. 2014) (defining paresthesia as a "sensation"—in other words, a physical feeling).  Moreover, paresthesia, along with Dr. Dave's observation that Shawnee had cold feet, are consistent with the diagnosis of "poorly controlled" diabetes.  *See* Docket Item 10 at 394; *see also Foot Complications*, AM. DIABETES ASS'N, https://www.diabetes.org/diabetes/complications/foot-complications (last visited Aug. 9, 2021) (explanation from the American Diabetes Association that "[p]eople with diabetes can develop many different foot problems" including "tingling, pain (burning or stinging), [and] weakness in the foot" as well as "[p]oor blood flow").

What is more, the ALJ's specific limitations in the RFC had no basis in medical opinion evidence.  For example, Dr. Dave said that Shawnee should "***avoid*** ladders and heights," Docket Item 10 at 394 (emphasis added), but the ALJ found that she "can . . . occasionally climb ladders, ropes, or scaffolds[; and] have occasional exposure to unprotected heights," *Id.* at 23.  The ALJ did not cite any medical opinion as the basis for his conclusion that contrary to Dr. Dave's opinion, Shawnee could "climb ladders" and "work at unprotected heights," but only do those things "occasionally."  *Id.*  So those specific limitations must have come from the ALJ's lay judgment and not that of any medical provider.  And that was error. [9]

---

[9] The Court "will not reach the remaining issues raised by [Shawnee] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 16, is DENIED, and Shawnee's motion for judgment on the pleadings, Docket Item 13, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: August 10, 2021
Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE